IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GERALD JONES,

       Plaintiff,

v.                                                    Case No. 25-cv-2017-NJR

KENNETH HALL, ERIN NICHOLSON,
BLAKE WILLIAMSON, JEFFREY
EHLERS, ANTHONY WILLS, and
MATTHEW PLUMMER (official capacity
only),

       Defendants.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Gerald Jones, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. On March 12, 2026, the Court denied Jones's request for emergency injunctive relief (Doc. 45). In response, Jones filed numerous motions including Notice and Motion to Report to the Court Ordering Inventory (Doc. 47), Motion for Reconsideration (Doc. 48), and Motion for Sanctions (Doc. 51).

### BACKGROUND

Jones is proceeding in this case on several claims related to his refusal to be housed in general population. He believes that he will face danger in both general population and protective custody and has refused placement, resulting in his continued stay in restrictive housing. Every time he refuses housing, he is re-admitted to restrictive housing and loses access to his personal property. With his Complaint, Jones sought an emergency injunction

1

and temporary restraining order seeking access to his property (Doc. 4). Because Jones alleged that he lost access to personal hygiene items, including toilet paper, the Court directed the warden of Menard to respond and ultimately set the matter for hearing. After the evidentiary hearing, the Court denied Jones's motion because he failed to demonstrate a likelihood of success on the merits of his claims (Doc. 45, pp. 18-21). Although Jones complained about his lack of access to his personal property, Jones clearly had access to basic hygiene items (*Id.* at pp. 19-20). He also had access to mental health services for any mental health issues that he alleged were exacerbated by the loss of his property (*Id.* at p. 20).

In response to the denial of his motion, Jones filed several motions regarding the testimony and evidence presented in opposition to his request for injunctive relief.

### A. Motion to Report to the Court Ordering Inventory and Motion to Reconsider

After the Court issued its Order denying his request for injunctive relief, Jones filed a motion to report to the Court ordering inventory (Doc. 47) and a motion to reconsider the denial of his request for injunctive relief (Doc. 48). Both motions accuse the witnesses at the evidentiary hearing of committing perjury. Jones alleges that Lieutenant Brandt approached his cell the day after the hearing and bragged about committing perjury during the hearing (Doc. 47, p. 2). Jones further notes that he received some of his property back on February 26, 2026, the day after the hearing, but only after his cell was inventoried and it was clear he was missing his property (*Id.* at p. 3). Jones never received a receipt for the inventory (*Id.*). He also never received his tablet charger.

Jones reiterates that he believes he is being subjected to the loss of his property as a form of retaliation and harassment designed to force him into general population (Doc. 48, p. 2). Jones accuses Plummer and Brandt of perjuring themselves and argues that the Court

failed to consider the inconsistencies in the testimony and the record (*Id.* at p. 4). He argues that the Court should have resolved the dispute over whether he actually had access to his property at the time of the hearing (*Id.* at pp. 4-5). He notes that he did not have access to his tablet at the hearing. Jones also argues that the inventory receipts were never produced nor was an official policy for property in restrictive housing (*Id.* at pp. 7, 14). Jones also argues that the Court failed to consider his serious mental illness and failed to consider the injuries to his arm from recent incidents of self-harm (*Id.* at pp. 9-10). Jones argues that he has emotional breakdowns as the result of his loss of property which cause him to self-harm (*Id.*). Finally, Jones argues that he has faced retaliation for his testimony at the hearing. He alleges that he has been placed in an unsanitary cell and threatened by Brandt. Despite claiming that he will self-harm, Jones alleges that officials have ignored his pleas for a crisis team (*Id.* at p. 12).

In response to Jones's motions, Matthew Plummer argues that Jones failed to demonstrate that the Court was mistaken as to the law or facts in the case (Doc. 49). Plummer notes that the Court considered Jones's complaints of threats to his safety and whether or not he had access to his property, but the Court properly found that Jones had failed to demonstrate that he was denied the minimal civilized measures of life's necessities.

### B. Motion for Sanctions (Doc. 51)

In his motion for sanctions, Jones again argues that Defendant Plummer failed to produce the policy and/or rule authorizing the confiscation of his property when he refuses housing. He also argues that Defendants failed to produce the inventory receipts for his property (Doc. 51, pp. 1, 6, 11). As with his other motions, Jones argues that the witnesses and attorneys at the preliminary injunction hearing knew that they were falsely testifying

3

that he had access to his property prior to the hearing when his property was not returned until after the hearing (*Id.* at p. 7).

Further, Jones argues that the initial declaration from Anthony Wills suggested that a "strip-out" policy did not exist at the prison and that an individual would only be stripped of his property if he was in crisis, threatened self-harm, or caused damage to his cell (Doc. 15-4, p. 2). Wills testified that Jones self-harmed and his property was confiscated on September 26, 2025, due to the risk of additional self-harm (*Id.*). Warden Matthew Plummer later testified that when an inmate refuses housing, he is placed in restrictive housing and his property is confiscated, inventoried, and then gradually returned (Doc. 38-1, p. 2). He testified that each time Jones refuses housing, he is re-admitted into restrictive housing, and his property is inventoried and later returned to him (*Id.* at p. 3).

Jones argues Wills's initial declaration was false, and he previously requested that the Defendants and their attorneys correct the false statements (Doc. 51, p. 2). Jones argues the statement was never withdrawn and the Court was influenced by the statements (*Id.*). He argues the statement was clearly false and contradictory to testimony and evidence regarding the confiscation of his property and his request for a crisis team after his property was taken (*Id.* at p. 3).

In response (Doc. 54) to the motion, Defendant Erin Nicholson argues that the Court did not rely on perjured testimony because there was a misunderstanding as to how Jones was subjected to the restricted property policy and any confusion was clarified in the supplemental response.

4

## DISCUSSION

In response to the denial of his request for injunctive relief, Jones filed several motions arguing that the Court was presented with perjured and/or inaccurate information in both the briefs and at the evidentiary hearing. He asks that the Court reconsider the denial of his request for injunctive relief, hold a new evidentiary hearing, and sanction defendants for failing to provide copies of the policies and the inventory receipts.

"[W]hether a motion filed within [28] days of the entry of judgment should be analyzed under Rule 59(e) or Rule 60(b) depends on the substance of the motion, not on the timing or label affixed to it." *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008) (emphasis in the original) (citing *Borrero v. City of Chicago*, 456 F.3d 698, 701-02 (7th Cir. 2006)). Nevertheless, a motion to reconsider filed more than 28 days after entry of the challenged order "automatically becomes a Rule 60(b) motion." *Hope v. United States*, 43 F.3d 1140, 1143 (7th Cir. 1994) (citing *United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir. 1992)); *see also Talano v. N.W. Med. Faculty Found., Inc.*, 273 F.3d 757, 762 (7th Cir. 2001). Jones's motion is properly filed pursuant to Rule 59(e).

A motion to alter or amend judgment filed pursuant to Rule 59(e) may only be granted if a movant shows there was a mistake of law or fact or presents newly discovered evidence that could not have been discovered previously. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (quoting *Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012)). "'[M]anifest error' is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal citations omitted).

5

Jones argues that the Court was misinformed or failed to consider certain issues regarding his access to his personal property. He reiterates that he faces threats to his safety and argues that the Court failed to consider his mental health status. But Jones merely restates his arguments that he previously raised in his original motion for injunctive relief and subsequent briefing. Jones previously stated that he faced threats in general population, voiced his belief that defendants and other staff sought to harm him, and testified that he faced mental health issues as a result of his loss of property. The Court considered each one of those claims, noting that Jones was unable to identify a tangible threat to his safety and that he had access to mental health services (Doc. 45, pp. 20-21). Although Jones believes that the evidence in the record supported his position, he fails to point to any mistake of fact by the Court. As the Order denying his request makes clear, Jones's arguments and testimony were considered, but his allegations failed to demonstrate that he faced the denial of life's basic necessities (*Id*. at p. 20).

Jones's main objection to the Court's ruling is his belief that Plummer and Brandt presented false testimony and that there was conflicting evidence regarding restrictive housing property policies. He argues that Wills originally testified that there was no "strip-out" policy but that Defendants later produced a memo regarding restricted property status (Doc. 38-4). He also argues that Plummer and Brandt testified that he had access to his property at the time of the hearing, but a subsequent affidavit from Jeremy Demond noted that Jones's tablet was not returned until February 26, 2026 (Doc. 43-1). Jones contends that most of his personal property was not returned until February 26.

But the Court acknowledged the confusing nature of the testimony regarding the property policies. Counsel even clarified in the supplemental briefing that Jones was in

6

restrictive housing and thus subject to restricted property. As a result, his property was confiscated, inventoried, and eventually returned to him. Although Jones claims that the confusion over the policy suggested perjury or some improper misrepresentation, the Court finds no evidence of improper conduct on the part of defendants or their counsel.

Jones also takes issue with the conflicting testimony about whether he had access to certain personal items at the time of the hearing. He suggests that Plummer and Brandt committed perjury when they said Jones had his property and later filings suggested that he did not have his tablet. But the Court finds no evidence of perjury. Both Plummer and Brandt testified that they believed that Jones had his property because they relied on inventory sheets and staff in the property department who informed them that Jones's property had been returned to him. Although it appears that neither official sought to go to Jones's cell to view his property (despite Brandt indicating he was in Jones's unit just prior to the hearing), their failure to do so does not constitute perjury. Their lack of first-hand knowledge required the Court to order additional discovery and briefing which could have been avoided had either official simply viewed Jones's cell prior to the hearing. But the Court does not find the testimony to be false or sanctionable.

Jones further argues that Defendants never produced the relevant inventory sheets, but the Court acknowledged that the documents were not included in the supplemental response (Doc. 45, p. 19 n. 4). Those documents proved not to be relevant because the issue was not whether Jones had access to personal items such as his tablet or charger.[1] As to Court

---

[1] Although not relevant for the preliminary injunction motion, the Court has ordered Defendants to file a notice indicating whether the inventory logs have been produced to Jones (Doc. 68, p. 2).

stated in its Order, the lack of such personal items does not amount to a constitutional violation (Doc. 45, p. 20). To be actionable, an inmate must be subjected to extreme deprivations of basic human needs. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). And there was no dispute that Jones had access to basic hygiene items including toilet paper. Thus, he failed to demonstrate that he was entitled to injunctive relief and his motion was properly denied.

CONCLUSION

For the reasons stated above, Jones's motion to report Court ordered inventory (Doc. 47), motion to reconsider (Doc. 48), and motion for sanctions (Doc. 51) are **DENIED**.

**IT IS SO ORDERED.**

**DATED:  June 12, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

8